DANIEL KELLY, J. (concurring).
¶29 We perceived a need for Wis. Stat. § 938.30(5) to say more *629 than it actually does. And that perception drove us to conjure additional material that doesn't really exist in the statute. That's an understandable impulse-we are loath to leave silence alone, to let a voice not speak, to leave something unsaid.
There is a silence where hath been no sound,
There is a silence where no sound may be,
In the cold grave-under the deep deep sea,
Or in wide desert where no life is found,
Which hath been mute, and still must sleep profound;
No voice is hush' d-no life treads silently,
But clouds and cloudy shadows wander free.
Thomas Hood, Silence (1827). In conversations, in stories, in all manner of communications we nod along as one thought flows comfortably into the next. But when the narrative unexpectedly stops, we reflexively rebel against the silence that denies us the rest of the story. So we finish the unspoken thought, complete the unfinished plot. As natural as that reaction might be in most affairs of life, we must give it no heed when we construe statutes. It is for the legislature to decide when to compose, and when to lay aside the pen. If that choice brings silence earlier than we expect or hope, our disappointment does not give us leave to take up the pen and write in its name.
¶30 But still, we did. The circuit court suspended A.L.'s delinquency proceeding pursuant to Wis. Stat. § 938.30(5) because it found he was not competent, and not likely to regain competency within the required timeframe. Subsequently, Mr. L. demonstrated competency in an unrelated proceeding, and thus arose the question of whether the circuit court *630 could resume the delinquency proceeding to evaluate his competency. We looked to § 938.30(5) to see what it might say about such a possibility. There we discovered that " § 938.30(5) does not address what becomes of the suspended delinquency proceedings for juveniles who are found not competent and not likely to become competent within the statutory time frame, like A.L." Majority op., ¶13. Alas, a double-edged silence: the statute said nothing about how proceedings might resume, nor *836 did it require their termination. The apparent result, as the circuit court observed, was a procedural "limbo" in which the proceeding could neither progress nor be dismissed.
¶31 We could not abide the statute's silence, so we said that our "reading of § 938.30(5) in conjunction with the language of ch. 938 demonstrates that a circuit court has the authority to resume suspended proceedings in cases where a juvenile was initially found not competent to proceed under § 938.30(5)(d) and not likely to become competent within the statutory time limits." Id., ¶ 15. Within the space of two paragraphs, we transformed Wis. Stat. § 938.30(5) from a statute that does not even address resumption of suspended delinquency proceedings, into a statute that definitively provides the necessary authority to resume. I think the first iteration was right. If the statute has something to say in paragraph 15 that it did not say in paragraph 13, it's only because we used the legislature's pen to finish the story we thought we should have heard.
¶32 This intrusion into legislative silence was not just unwarranted, it was completely unnecessary. When the legislature adopted Wis. Stat. § 938.30(5), it was composing against the background of our pre-existing authority. We have already recognized that *631 the authority to suspend and resume proceedings based on a defendant's incompetency pre-dated this statute. In fact, our competency statutes are actually codifications of principles and practices that were already old before we even became a state. In State v. Steward, we recalled the practice of English courts when competency was an issue:
Also if a man in his sound memory commits a capital offense, and before arraignment for it he becomes mad, he ought not to be arraigned for it, because he is not able to plead to it with that advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried, for how can he make his defense? If, after he be tried and found guilty, he loses his senses before judgment, judgment shall not be pronounced; and if, after judgment, he becomes of nonsane memory, execution shall be stayed; for peradventure, says the humanity of the English law, had the prisoner been of sound memory, he might have alleged something in stay of judgment or execution.
124 Wis. 623, 630, 102 N.W. 1079 (1905) (quoting 4 William Blackstone, Commentaries ch. 2 *24-25). "Our statute," we said, "is an affirmance of these humane principles of the common law, and the reason upon which it rests makes manifest the intention of the Legislature." Id. at 630-31, 102 N.W. 1079. See also Crocker v. State, 60 Wis. 553, 556, 19 N.W. 435 (1884) ("At common law, if a person, after committing a crime, became insane, he was not arraigned during his insanity, but was remitted to prison until such incapacity was removed.").
¶33 The authority to regulate our proceedings is not, of course, exclusive to us-the legislature may make its contribution as well: "[T]he power to regulate procedure has been regarded not as an exclusively legislative power, nor yet as an exclusively judicial *632 power, but certainly as a power properly within the judicial province when not otherwise directed by the legislature." Rules of Court Case, 204 Wis. 501, 510, 236 N.W. 717 (1931). So the real question is whether the legislature, in adopting Wis. Stat. § 938.30(5), removed our pre-existing authority to resume juvenile delinquency proceedings to determine whether the defendant has regained his competency. The court's opinion does a convincing job of demonstrating there is no such prohibition, *837 and I agree. Therefore, in the absence of any statutory prohibition the court may resume the suspended juvenile delinquency proceedings. But it may do so not because of any authority granted by § 938.30(5), but because the legislature did not remove the authority we already had.
¶34 When the legislature stops writing, "There is a silence where hath been no sound / There is a silence where no sound may be...." We should not surmise it is unintentional, or accidental. No sound belongs there because it is the silence of the people's representatives choosing not to speak. "No voice is hush'd" there because there is no voice wishing to be heard. And in that stillness, "no life treads silently" in hopes we will give it expression. The quietness following the period in the statute's last sentence is the oracular pronouncement that all has been said that will be said. We may no more compel the legislature to speak than we may ignore it when it does. For these reasons, I join the court's opinion except to the extent it discovers authority to resume Mr. L.'s delinquency proceedings in Wis. Stat § 938.30(5). The authority to resume those proceedings both pre-dated and survived enactment of that statute.